UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CAPITOL CITY PRODUCE COMPANY** | **CIVIL ACTION** |
| **VERSUS** | |
| **SAMMY'S HOLDINGS, L.L.C., ET AL.** | **NO: 20-00030-BAJ-SDJ** |

RULING AND ORDER

Before the Court is Plaintiff Capitol City Produce Company, L.L.C.'s **Motion for Entry of Default Judgment (Doc. 14)** against Defendants Sammy's Holdings, L.L.C., t/a Sammy's Grill, a/t/a Creole Cabana ("Sammy's"), S.C.C. of Baton Rouge, L.L.C., t/a Sammy's Grill, a/t/a Creole Cabana ("Creole Cabana"), and Sammy T. Nagem ("Nagem"). (Doc. 14). The Motion is unopposed.

For the reasons stated herein, Plaintiff's Motion is **GRANTED**, and Plaintiff is awarded damages as set forth herein.

I.   RELEVANT BACKGROUND

    A. Alleged Facts

This action arises from Defendants' alleged failure to pay Plaintiff for produce and goods. (Doc. 1, ¶ 5–8). Between June 21, 2019 and August 5, 2019, Plaintiff allegedly sold and delivered to Defendants, in interstate commerce, $44,878.05 worth of wholesale quantities of produce and other goods, of which $36,909.26 is owed for produce, all of which remains unpaid. (Doc. 14-2, ¶ 9). In 2019, Plaintiff sold and delivered produce to Defendants that exceeded $230,000, with weight in excess of

1

2,000 pounds. (Doc. 1, ¶ 6). Defendants accepted the produce and other goods, but allegedly failed to pay Plaintiff despite Plaintiff's repeated demands. (*Id.* at ¶ 8).

Plaintiff also alleges that at the time of Defendants' receipt of the produce, Plaintiff became a beneficiary to a statutory trust designed to assure payment to produce suppliers. (*Id.* at ¶ 9). Plaintiff asserts that the trust consists of all produce or produce-related assets, including all funds commingled with funds from other sources and all assets procured by such funds, in the possession and control of Defendants since creation of the trust. (*Id.*). Plaintiff alleges that it preserved its interest in the trust, and remains a beneficiary until Defendants make full payment for produce and bank charges. (*Id.* at ¶ 10). Defendants have not disputed the alleged debt, but have failed to pay Plaintiff. (*Id.* at ¶ 11). Plaintiff alleges that Defendants are failing to maintain sufficient assets in the trust to pay Plaintiff and are dissipating trust assets, including closing three of four of Defendants' restaurant locations without paying Plaintiff. (*Id.* at ¶ 13).

Plaintiff seeks to enforce the trust provisions of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c). (*Id.* at ¶ 5). Specifically, Plaintiff seeks the following:

1. Payment from the statutory trust due to Defendants' alleged failure to pay trust funds and failure to make prompt payment of trust assets (*Id.* at ¶ 14–20 (citing 7 C.F.R. § 46.2(aa)(5); 7 U.S.C. § 499e(c));

2. Payment from Sammy's due to Sammy's failure and refusal to pay Plaintiff for produce and other goods (Doc. 1, ¶ 22–23);

2

3. Payment from Creole Cabana due to Creole Cabana's failure and refusal to pay Plaintiff for produce and other goods (*Id.* at ¶ 23);

4. Payment from Nagem for failure to direct Defendant corporations to fulfill their statutory duties to preserve PACA trust assets and failure to pay Plaintiff for produce and bank fees Plaintiff incurred (*Id.* at ¶ 24–28);

5. An Order declaring that any assets Creole Cabana acquired, retained, and/or maintained with commingled Sammy's sales proceeds are PACA trust assets belonging to Plaintiff and directing Creole Cabana to disgorge and transfer all PACA trust assets to Plaintiff (*Id.* at ¶ 37);

6. Prejudgment interest in the amount of 1.5% per month (*Id.* at ¶ 41); and

7. Attorney's fees and costs incurred in this action (*Id.* at ¶ 41–42).

### B. Procedural History

Plaintiff filed suit on January 14, 2020. (Doc. 1). Despite being personally served on January 23, 2020, Defendants have not appeared in this case. (Doc. 4). On February 14, 2020, Plaintiff filed Requests for Entries of Default. (Doc. 7–Doc 9). The Clerk of Court entered Clerk's Entries of Default on the same day. (Doc. 10–Doc. 12). Plaintiff now moves for a Default Judgment against Defendants.

## II. STANDARD OF REVIEW

The United States Court of Appeals for the Fifth Circuit has adopted a three-step process to obtain a default judgment. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a party "has failed to

plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). Next, an entry of default must be entered by the clerk when the default is shown "by affidavit or otherwise." *See id.*; *New York Life Ins. Co.*, 84 F.3d at 141. Third, a party may apply to the court for a default judgment after an entry of default. Fed. R. Civ. P. 55(b); *New York Life Ins. Co.*, 84 F.3d at 141.

After a party files for a default judgment, courts must apply a two-part process to determine whether a default judgment should be entered. First, a court must consider whether the entry of default judgment is appropriate under the circumstances. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Several factors are relevant to this inquiry, including the following: (1) whether there are material issues of fact; (2) whether there has been substantial prejudice; (3) whether the grounds for default have been clearly established; (4) whether the default was caused by excusable neglect or good faith mistake; (5) the harshness of the default judgment; and (6) whether the court would think itself obliged to set aside the default on a motion by Defendant. *Id.* Default judgments are disfavored due to a strong policy in favor of decisions on the merits and against resolution of cases through default judgments. *Id.* Default judgments are "available only when the adversary process has been halted because of an essentially unresponsive party." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citation omitted).

Second, the Court must assess the merits of Plaintiff's claims and determine whether Plaintiff has a claim for relief. *Nishimatsu Constr. Co. v.*

4

*Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *Hamdan v. Tiger Bros. Food Mart, Inc.*, No. CV 15-00412, 2016 WL 1192679, at *2 (M.D. La. Mar. 22, 2016).

### III. ANALYSIS

#### A. Whether Default Judgment Is Appropriate

The Court must determine whether default judgment is appropriate under the circumstances by considering the *Lindsey* factors. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Here, Defendants failed to file an Answer or Rule 12 Motion in response to Plaintiff's Complaint. (Doc. 1). Consequently, there are no material issues of fact. *See id.*; *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The grounds for default have been clearly established in the record. (Doc. 4–Doc. 12); *See Lindsey*, 161 F.3d at 893. No evidence before the Court indicates either substantial prejudice or that Defendants' failure to respond or appear was the result of "good faith mistake or excusable neglect." *See id.* Further, Defendants' failure to file a responsive pleading or otherwise defend the instant lawsuit mitigates the harshness of a default judgment. *See id.*; *see also Taylor v. City of Baton Rouge,* 39 F. Supp. 3d 807, 814 (M.D. La. 2014). Finally, the record contains no facts giving rise to good cause to set aside the default judgment if challenged by Defendants. *See Lindsey*, 161 F.3d at 893. The Court finds that the *Lindsey* factors weigh in favor of entry of default judgment in favor of Plaintiff.

### B. Whether Plaintiff's Complaint Establishes a Viable Claim for Relief

The Court must also assess the merits of Plaintiff's claims to determine whether Plaintiff's Complaint establishes a viable claim for relief. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *Hamdan v. Tiger Bros. Food Mart, Inc.*, No. CV 15-00412, 2016 WL 1192679, at *2 (M.D. La. Mar. 22, 2016).

#### i. Perishable Agricultural Commodities Act ("PACA")

Plaintiff brings this action under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 449a–499s, which was enacted "to regulate the sale of perishable commodities and promote fair dealing in the sale of fruits and vegetables." *Bocchi Ams. Assocs. Inc v. Com. Fresh Mktg. Inc.*, 515 F.3d 383, 387 (5th Cir. 2008) (citing *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 413 (5th Cir. 2003)) (internal quotation marks omitted). PACA requires buyers of produce to make "full payment promptly" for any produce purchased. 7 U.S.C. § 499b(4); *see also Bocchi Ams. Assocs. Inc.*, 515 F.3d at 387–88. If a buyer fails to make full payment promptly, the seller may file a civil suit against the buyer. *Id.* at 338; *see also* 7 U.S.C. § 499e(a), (b). Here, because Defendants purchased over $230,000 worth of produce in 2019 and in excess of 2,000 pounds, they are dealers subject to the trust provisions of PACA. 7 C.F.R. §§ 46.2(m), 46.2(x) (2020); 7 U.S.C. § 499e(c); (Doc. 14-2, ¶ 8).

PACA gives sellers two tools with which to enforce buyers' payment obligations. *Bocchi Ams. Assocs. Inc.*, 515 F.3d at 388. First, PACA creates,

immediately upon delivery of the produce, a trust in favor of unpaid sellers, which attaches to the products themselves and the proceeds. *Bocchi Ams. Assocs. Inc.*, 515 F.3d at 388; 7 U.S.C. § 499e(c)(2); 7 C.F.R. § 46.46(b). If the seller is not paid promptly, the buyer must preserve trust assets, and the seller has a "superpriority" right that trumps the rights of the buyer's other secured and unsecured creditors. *Bocchi Ams. Assocs. Inc.*, 515 F.3d at 388 (citing *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 413 (5th Cir. 2003)). It is unlawful for a buyer to fail to maintain the trust as required under 7 U.S.C. § 499e(c). *See* 7 U.S.C. § 499b(4). PACA's "trust provision" requires buyers of produce "to hold either the produce or all proceeds or accounts receivable from a subsequent sale of the produce in trust for the benefit of unpaid suppliers until 'full payment of the sums owing in connection with such transactions has been received by' the supplier." *Iscavo Avocados USA, L.L.C. v. Pryor*, 953 F.3d 316, 318 (5th Cir. 2020) (citation omitted); 7 U.S.C. § 499e(c)(2).

Second, PACA imposes secondary liability on persons who are in a position to control trust assets and fail to do so. *Bocchi Ams. Assocs. Inc.*, 515 F.3d at 388 (citing *Golman–Hayden Co. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000)). Thus, if the buyer's assets are insufficient to satisfy the seller's claim, this provision allows a seller to seek payment from the buyer's principals, individually. *Bocchi Ams. Assocs. Inc.*, 515 F.3d at 388. That power is particularly important in cases where the corporate buyer is no longer in business, and a common-law breach of contract claim only would yield an unenforceable judgment. *Id.*

A produce supplier preserves its trust rights by giving written notice of intent to preserve trust benefits. *Golman-Hayden Co.*, 217 F.3d at 352; 7 U.S.C. § 499e(c)(3). Such notice can be accomplished by including the following language on the face of an invoice:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

7 U.S.C. § 499e(c)(4). Here, Plaintiff included the requisite language on its invoices to Defendants. (Doc. 14-1, p. 5; Doc. 14-6; Doc. 14-9–Doc. 14-10). Plaintiff effectively provided notice to Defendants of its intent to preserve trust benefits under PACA.

Plaintiff has stated a viable claim for relief under PACA because of the following: (1) Defendants are "dealers" under PACA; (2) Defendants were properly put on notice of Plaintiff's intent to preserve its trust benefits; (3) Defendants received produce from Plaintiff; (4) Defendants failed to make full payment promptly; and (5) Defendants failed to hold the produce or proceeds in trust for Plaintiff's benefit until Defendants made full payment of amounts owed.

### ii. Primary and Secondary Liability

PACA liability attaches first to the licensed commission merchant, dealer, or broker of perishable agricultural commodities. *Iscavo Avocados U.S.A., L.L.C. v. Pryor*, 953 F.3d 316, 318–19 (5th Cir. 2020); *see also Reaves Brokerage Co. v. Fid. Factors, L.L.C.*, No. CIV.A.3:99-CV-2848M, 2002 WL 32125950, at *9

(N.D. Tex. Feb. 8, 2002), *aff'd sub nom. Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.,* 336 F.3d 410 (5th Cir. 2003) ("PACA liability attaches first to the trustee corporation."). Accordingly, Sammy's and Creole Cabana, the corporate purchasers of the produce, are primarily liable for the amounts owed to Plaintiff.

PACA imposes secondary liability on persons who are in a position to control trust assets and fail to do so. *Bocchi Ams. Assocs. Inc v. Com. Fresh Mktg. Inc.*, 515 F.3d 383, 388 (5th Cir. 2008) (citing *Golman–Hayden Co. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000)). Specifically, "individual shareholders, officers, or directors of a corporation who are in a position to control trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under PACA." *Golman-Hayden Co.*, 217 F.3d at 351. The Fifth Circuit viewed the imposition of personal liability as "consistent with the intent of Congress in establishing the statutory trust provisions of PACA." *Id.* Further, a shareholder may not avoid liability under PACA merely by failing to assume responsibilities that he is entitled to. *Ruby Robinson Co. v. Herr*, 453 F. App'x 463, 465 (5th Cir. 2011) (citing *Golman–Hayden*, 217 F.3d at 351).

Here, Plaintiff asserts that Nagem was the owner and manager of Sammy's and Creole Cabana and was in a position of control over the trust assets. (Doc. 1, ¶ 4(c); Doc. 14-1, p. 7). Plaintiff further contends that Nagem's failure to preserve the trust assets for Plaintiff is a breach of his fiduciary duty for which he is personally liable. (Doc. 14-1, p. 7). Owners and managers of companies buying

wholesale quantities of produce, such as Nagem, have been held personally liable for breach of a PACA trust regardless of whether they personally dissipated trust assets. *Golman-Hayden Co.*, 217 F.3d at 348. The Fifth Circuit held:

> PACA is designed to protect agricultural producers who, because of the nature of their industry, must rely on assurances of payment from dealers following the dealers' receipt of their commodities. This purpose would be thwarted by permitting individual shareholders to avoid liability by refusing to protect trust assets over which they had the authority.

*Ruby Robinson Co. v. Herr*, 453 F. App'x 463, 466 (5th Cir. 2011). Because Nagem had authority over the trust assets and did not protect such assets, Nagem is secondarily liable to Plaintiff.

### i. Joint and Several Liability—Sammy's and Creole Cabana

Next, Plaintiff asserts that the corporate entities of Sammy's and Creole Cabana should be disregarded and the parties held jointly and severally liable to avoid frustrating the purpose of the PACA trust. (Doc. 14-1, p. 9). Plaintiff asserts that Sammy's transferred commingled sales proceeds to Creole Cabana in breach of the PACA trust. (Doc. 1, ¶ 9; Doc. 14-1, p. 8). Plaintiff further contends that while Sammy's and Creole Cabana were separately incorporated by Nagem, Sammy's and Creole Cabana's cash sales proceeds were commingled with funds in Sammy's bank accounts used to pay both Sammy's and Creole Cabana's debts in the latter half of 2019 prior to the cessation of operations. (Doc. 14-1, p. 8–9).

When two or more corporations constitute a single business enterprise ("SBE"), a court may "disregard the concept of corporate separateness and extend liability to

10

each of the affiliated corporations." *Bona Fide Demolition & Recovery, LLC v. Crosby Const. Co. of La.*, 690 F. Supp. 2d 435, 443 (E.D. La. 2010) (citing *Brown v. Auto. Cas. Ins. Co.*, 93-2169 (La. App. 1st Cir. 10/7/94), 644 So. 2d 723, 727 *writ denied*, 94-2748 (La. 1/6/95), 648 So. 2d 932; *In re: Ark–La–Tex Timber Co.*, 482 F.3d 319, 335 (5th Cir. 2007); *Gundle Lining Construction Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201 (5th Cir. 1996) (discussing piercing the corporate veil between two affiliated companies in terms of "alter ego" theory)). An SBE "occurs when a corporation is found to be the 'alter ego, agent, tool or instrumentality of another corporation.'" *Id.* (citations omitted). SBE theory uses an eighteen-factor test, in which no factor is dispositive.[1] The list of eighteen factors is non-exhaustive, and the Court must still consider the "totality of the circumstances" in each case. *Bona Fide Demolition & Recovery, LLC*, 690 F. Supp. 2d at 444 (citing *Green v. Champion Ins. Co.*, 577 So. 2d 249, 251–53 (La. Ct. App.), *writ denied*, 580 So. 2d 668 (La. 1991)).

Here, Plaintiff's sole allegation regarding SBE is that Defendants commingled

---

[1] The following factors have been used to support an argument that a group of entities constitute a single business enterprise: (1) corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control; (2) common directors or officers; (3) unified administrative control of corporations whose business functions are similar or supplementary; (4) directors and officers of one corporation act independently in the interest of that corporation; (5) corporation financing another corporation; (6) inadequate capitalization ("thin incorporation"); (7) corporation causing the incorporation of another affiliated corporation; (8) corporation paying the salaries and other expenses or losses of another corporation; (9) receiving no business other than that given to it by its affiliated corporations; (10) corporation using the property of another corporation as its own; (11) noncompliance with corporate formalities; (12) common employees; (13) services rendered by the employees of one corporation on behalf of another corporation; (14) common offices; (15) centralized accounting; (16) undocumented transfers of funds between corporations; (17) unclear allocation of profits and losses between corporations; and (18) excessive fragmentation of a single enterprise into separate corporations. *Green v. Champion Ins. Co.*, 577 So. 2d 249, 257–58 (La. Ct. App.), *writ denied*, 580 So. 2d 668 (La. 1991).

11

funds. (Doc. 1, ¶ 9). In support of its Motion for Entry of Default Judgment, Plaintiff attached a declaration of Devin Roy, Plaintiff's Chief Financial Officer, noting that Defendants' partial payments "indicat[ed] to [Roy] that the cash sales proceeds (PACA trust assets), [sic] of Sammy's and Creole Cabana were being commingled, without regard to the corporate form." (Doc. 14-2, ¶ 13). Such conclusory and barebones allegations are insufficient for this Court to conduct a full analysis as to whether the corporate form should be disregarded here. The Fifth Circuit has held that "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short, despite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). A review of the record reflects a lack of sufficient well-pleaded facts to warrant disregarding the corporate device. Accordingly, Sammy's and Creole Cabana will each be held liable for their respective debts.

Alternatively, Plaintiff contends that under general trust principles, a transferee that is a bona fide purchaser should not be deprived of proceeds even if the property was transferred in breach of the trust. (Doc. 14-1, p. 10). Plaintiff asserts that when trust assets are diverted to the maintenance of other assets and business ventures of a third-party transferee who does not have bona fide purchaser status, such as Sammy's and Creole Cabana, those other assets and business ventures are subjected to a constructive trust under ordinary trust principles. (*Id.* at p. 10). Accordingly, Plaintiff submits that Sammy's and Creole Cabana should be jointly and

severally liable for the debts owed to Plaintiff. (*Id.*). The Fifth Circuit has found, however, that "it is clear that constructive trusts are not recognized under Louisiana law." *Poe v. United Ass'n of Journeyman & Apprentices of the Plumbing & Pipefitting Indus. of the United States of Am. AFL-CIO Local 198 Health & Welfare Fund*, No. CV 18-0667-BAJ-EWD, 2019 WL 4855158, at *4 (M.D. La. Oct. 1, 2019) (citing *Schwegmann v. Schwegmann*, 441 So.2d 316, 323 (5th Cir. 1983)). Plaintiff's constructive trust argument fails. Accordingly, Sammy's and Creole Cabana will each be held liable for their respective debts.

### C. Damages

A defaulting defendant "concedes the truth of the allegations of the Complaint concerning defendant's liability, but not damages." *Ins. Co. of the W. v. H & G Contractors, Inc.*, 2011 WL 4738197, *4 (S.D. Tex., Oct. 5, 2011). A court's award of damages in a default judgment must be determined after a hearing, unless the amount claimed can be demonstrated "by detailed affidavits establishing the necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). If a court can mathematically calculate the amount of damages based on the pleadings and supporting documents, a hearing is unnecessary. *Joe Hand Promotions, Inc. v. Alima*, No. 3:13–CV–0889–B, 2014 WL 1632158, at *3 (N.D. Tex. Apr. 22, 2014) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)). Here, Plaintiff justifies the damages sought with the following: (1) declaration of Devin Roy, Plaintiff's Chief Financial Officer; (2) credit application; (3) sales ledgers; (4) invoices; (5) itemized statements of account;

13

(6) copies of checks returned for nonsufficient funds; and (7) ACH transfers. (Doc. 14-2–Doc. 14-18). A review of the record reflects that the elements of damages are mathematically calculable based on the supporting documentation and affidavits submitted; a hearing is not necessary.

Capitol City sold and delivered to Defendants fresh produce in calendar year 2019 that exceeded $230,000 and that weighed in excess of 2,000 pounds. (Doc. 14-2, ¶ 8; Doc. 14-5). Between June 21, 2019 and August 5, 2019, Plaintiff sold and delivered to Defendants, in interstate commerce, $44,878.05 worth of wholesale quantities of produce and other goods, of which $36,909.26 is owed for produce for which Plaintiff preserved its interest in the PACA trust, all of which remains unpaid. (Doc. 14-2, ¶ 9; Doc. 14-8). The record contains itemized statements of account establishing that Sammy's owes the principal sum of $39,223.02, and Creole Cabana owes the principal sum of $5,655.03. (*Id.*). In June and July 2019, Plaintiff received two checks from Sammy's Holdings, LLC, and one check from SCC Holdings, LLC, that were returned for nonsufficient funds. (Doc. 14-2, ¶ 12; Doc. 14-11). Plaintiff was charged $75 in fees for returned checks. (*Id.*).

Using the information provided, the Court mathematically calculated the damages claimed. Sammy's is primarily liable to Plaintiff for a total principal amount of $39,223.02 for produce and other goods, plus $50 for fees owed for the issuance of checks with nonsufficient funds.[2] Creole Cabana is primarily liable to Plaintiff for a

---

[2] Plaintiff asserts that it was charged $75 in fees as a result of checks returned for nonsufficient funds. (Doc. 14-2, ¶ 12). The record reflects three checks returned for nonsufficient funds. (Doc. 14-11). Two checks were issued by Sammy's Holdings, LLC ("Sammy's"); one check was issued by SCC Holdings, LLC ("Creole Cabana").

total principal amount of $5,655.03 for produce and other goods, plus $25 for fees owed for the issuance of checks with nonsufficient funds. Nagem, individually, is secondarily liable to Plaintiff if the assets of Sammy's and Creole Cabana are insufficient to satisfy their liability, for the total PACA amount of $36,909.26.

### D. Interest and Attorney's Fees

Defendants also owe Plaintiff both interest and attorney's fees. Plaintiff's invoices to Sammy's (Doc. 14-6; Doc. 14-8; Doc. 14-9) and Creole Cabana (Doc. 14-10), contain the following provision:

> Interest at 1.5% per month added to unpaid balance. Buyer agrees to pay interest, attorneys fees, [sic] and costs necessary to collect any unpaid balance due hereunder. Interest, attorney's fees, and costs necessary to collect any balance due hereunder shall be considered sums owing in connection with this transaction under the PACA trust.

(Doc. 14-6; Doc. 14-8–Doc. 14-10). The credit application with Plaintiff, signed by Nagem, also includes an agreement to pay Plaintiff the following: (1) a service charge of 1.5% per month, 18% per annum, on all past due balances; and (2) attorney's fees if Plaintiff employed a third party to collect any outstanding monies owed. (Doc. 14-4, p. 4). In the credit application with Plaintiff, Nagem "personally guarantee[d] the payment by Applicant to [Plaintiff] of all amounts due and owing now and from time to time hereinafter from Applicant to [Plaintiff]." (Doc. 14-4, p. 4). Based on the parties' agreement and the calculation of interest provided in the record, Sammy's owes Plaintiff $3,517.03 in interest and Creole Cabana owes Plaintiff $443.00 in interest. (Doc. 14-2; Doc. 14-4, p. 4; Doc. 14-14).

Although PACA does not expressly provide for an award of attorney's fees, the PACA trust provision states that PACA trust assets must be held for the benefit of all unpaid sellers "until full payment of the sums owing in connection with such transactions has been received" by the sellers. 7 U.S.C. § 499e(c)(2). Several circuits have interpreted the phrase "sums owing in connection with" to allow an award of attorney's fees related to collection efforts when such fees are included in the sales contract between the PACA buyer and seller. *See Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 709 (2d Cir. 2007); *Pac. Int'l Mktg., Inc. v. A & B Produce, Inc.*, 462 F.3d 279, 285–86 (3d Cir. 2006); *Middle Mountain Land & Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220, 1222–23 (9th Cir. 2002); *Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 632–33 (11th Cir. 2004). The Fifth Circuit recently supported that interpretation, explaining:

> The phrase 'sums owing in connection with' is broad. It unambiguously encompasses not just the contract price for the delivered agricultural commodities but also all sums the buyer owes in connection with that transaction. Attorneys' fees a seller incurs in seeking to collect on an unpaid invoice are necessarily incurred in connection with the transaction memorialized by the invoice. And when the seller agrees to pay those fees in the same invoice, the fees are 'owed in connection with' the transaction.

*Iscavo Avocados USA, L.L.C. v. Pryor*, 953 F.3d 316, 318, 319–20 (5th Cir. 2020).

A court may impose joint and several liability in setting fees. *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 772 (5th Cir. 1996) (finding parties jointly and severally liable for attorney's fees because there was a single indivisible injury and each party played a substantial role in the litigation). Here, joint and several liability for attorney's fees is appropriate and would not lead to inequitable results.

16

Each Defendant agreed to pay Plaintiff attorney's fees if Plaintiff was forced to bring a collection action. (Doc. 14-4; Doc. 14-6; Doc. 14-8–Doc. 14-10). Plaintiff brought this collection action against Defendants collectively for amounts Nagem and his two companies, Sammy's and Creole Cabana, owe Plaintiff. Defendants have had a full and fair opportunity to respond and refute Plaintiff's assertions, but failed to avail themselves of this opportunity, despite ample time to do so. There is no reasonable basis to apportion the attorney's fees at issue between Defendants. Accordingly, Defendants are jointly and severally liable for attorney's fees.

Where a motion is unopposed, the prevailing party "clearly" succeeds on the merits and is entitled to fees. *1 Lincoln Financial Co. v. Metropolitan Life Ins. Co.*, 428 F. App'x 394, 396 (5th Cir. 2011). Once the district court concludes that a party is entitled to attorney's fees, it must utilize the "lodestar" method to determine the amount to be awarded. *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1459 (5th Cir. 1995). Under this method, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys, and then multiply the two figures together to arrive at the "lodestar." *Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319, 324–325 (5th Cir. 1995) (This calculation requires not only a determination of whether the total number of hours claimed were reasonable but also whether the particular hours claimed were reasonably expended); *Forbush v. J.C.Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996). The lodestar is then adjusted upward or downward, depending on the circumstances of the case, after assessing the dozen factors set forth in *Johnson v. Georgia Highway*

17

*Express.*[3] 488 F.2d 714, 717–19 (5th Cir. 1974). The fee applicant has the burden to submit adequate documentation of the hours reasonably expended. *Kellstrom,* 50 F.3d at 324.

Plaintiff offers declarations of Mary Jean Fassett and Keary L. Everitt, Plaintiff's Counsel, to support its claim for attorney's fees.[4] (Doc. 14-15; Doc. 14-17). Fassett charged a rate of $425.00 per hour, and her colleague, Elizabeth Kate Ellis, charged a rate of $400.00 per hour. (Doc. 14-15). Everitt charged a rate of $300.00 per hour. (Doc. 14-17). Plaintiff's Counsel represents their rates to be commensurate with the hourly rates charged by attorneys in their respective areas with similar experience. (Doc. 14-5; Doc. 14-7). Fassett claims $10,402.00, and Everitt claims $4,379.70 in fees, for a total of $14,781.70 in attorney's fees. (Doc. 14-15, p. 3; Doc. 14-17, p. 2). In further support, Plaintiff offers a detailed billing transaction statement outlining each entry of time worked and billed to prosecute this litigation. (Doc. 14-16; Doc. 14-18).

The Fifth Circuit has previously found similar support for an award of fees and costs to be "marginal at best." *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997). Although "sparse" in documentation, however, the Fifth Circuit could not find such support to be "so vague or incomplete" to preclude a

---

[3] These factors include: (1) the time and labor required for the litigation; (2) the novelty and complication of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee: (6) whether the fee is fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case was "undesirable"; (11) the type of attorney-client relationship and whether that relationship was long-standing; and (12) awards made in similar cases.

[4] Mary Jean Fassett is a Senior Associate at McCarron & Diess in Washington, D.C. (Doc. 14-15). Keary L. Everitt is a partner at Everitt and Latham, L.L.C. in New Orleans, Louisiana. (Doc. 14-17).

meaningful review as to whether the hours expended were reasonable. *Id.* at 823 (citing *League of United Latin Am. Citizens # 4552 v. Roscoe Indep. School Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997)). Here, unlike in the documentation reviewed by the Fifth Circuit, the billing entries are much more descriptive and detailed. The hours expended during pre-suit attempts to collect payment through the period of the filing of the default judgment was under fifty hours. The work was performed by differing levels of attorneys at rates ranging between $300/hour to $450/hour. These rates are reasonable for the location and reputation of the law firms. The total amount of fees and costs, less than $15,000, in relation to the result obtained, shows efficient work with a high-value result. While Plaintiff's Counsel could have provided additional information to be considered when applying the *Johnson* factors, the Court finds that sufficient support has been provided to determine that the fees and costs Plaintiff seeks are reasonable and comply with the *Johnson* factors. *See Primrose Operating Co. v. National Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) ("trial courts are considered experts as to the reasonableness of attorney's fees").

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion for Entry of Default Judgment (Doc. 14)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Sammy's Holdings, L.L.C., t/a Sammy's Grill, a/t/a Creole Cabana ("Sammy's") is liable to Plaintiff for a total principal amount of $39,223.02 for produce and other goods, $3,517.03 in interest,

19

and $50 in fees owed for the issuance of checks returned for nonsufficient funds.

**IT IS FURTHER ORDERED** that S.C.C. of Baton Rouge, L.L.C., t/a Sammy's Grill, a/t/a Creole Cabana ("Creole Cabana") is liable to Plaintiff for a total principal amount of $5,655.03 for produce and other goods, $443 in interest, and $25 in fees owed for the issuance of checks returned for nonsufficient funds.

**IT IS FURTHER ORDERED** that if the assets of Sammy's Holdings, L.L.C., t/a Sammy's Grill, a/t/a Creole Cabana ("Sammy's") and S.C.C. of Baton Rouge, L.L.C., t/a Sammy's Grill, a/t/a Creole Cabana ("Creole Cabana") are insufficient to satisfy the judgment in favor of Plaintiff, Sammy T. Nagem, individually, is secondarily liable to Plaintiff for the total PACA amount of $36,909.26, and $3,960.03 in interest.

**IT IS FURTHER ORDERED** that Sammy's Holdings, L.L.C., t/a Sammy's Grill, a/t/a Creole Cabana ("Sammy's"), S.C.C. of Baton Rouge, L.L.C., t/a Sammy's Grill, a/t/a Creole Cabana ("Creole Cabana"), and Sammy T. Nagem are jointly and severally liable to Plaintiff for $14,781.70 in attorney's fees.

Baton Rouge, Louisiana, this 25th day of November, 2020

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**